## A93A0042. PAYNE v. THE STATE.
(434 SE2d 543)

SMITH, Judge.
Joel Payne was tried before a jury and found guilty of driving with a suspended license, failure to maintain lane, DUI, and speeding. He appeals from the judgments of conviction and sentences entered

by the trial court on the jury's verdicts of guilt.

1. At the conclusion of the State's evidence, Payne unsuccessfully moved to dismiss the charge of driving with a suspended license. His contention is that while his license for a time had been suspended, the license had been reinstated by the Department of Public Safety prior to his arrest.

The particular suspension violation relied upon by the State is a DUI conviction dated December 14, 1988. At the time of this DUI conviction, former OCGA § 40-5-70 (a) expressly provided that " '(t)he driver's license of any person convicted of violating Code Section 40-6-391 (the DUI provision) *shall by operation of law* be suspended, and such suspension shall be subject to [certain] terms and conditions. . . .' (Emphasis supplied.)" Former OCGA § 40-5-70 (c) "state[d] that the period of suspension [began] on the date of the DUI conviction. It thus appears that the legislature intended OCGA § 40-5-70 to effectuate suspension or revocation automatically upon a conviction for DUI, the notice being the trial for violation of OCGA § 40-6-391; i.e., notice 'by operation of law.' " *Hale v. State,* 188 Ga. App. 524, 525 (1) (373 SE2d 250) (1988).[1]

Because the 1988 DUI conviction was Payne's second within five years, the length of time his license was suspended was three years. Former OCGA § 40-5-70 (b) (1) (B) (now codified at OCGA § 40-5-63 (a) (2)). The date of arrest in the case was August 24, 1991, less than three years after the date of his 1988 DUI conviction. However, former OCGA § 40-5-70 (b) (1) (B) provided that, "[a]t the end of 120 days, the person [whose driver's license has been suspended by operation of law under this section] may apply to the Department of Public Safety for reinstatement of his driver's license," and provided further that the license "*shall* be reinstated" if the person submitted proof of compliance with certain requirements. The effect of this procedure for reinstatement is two-fold. First is the creation of a *minimum* mandatory suspension of driving privileges for 120 days. Second is the creation of the *right* to reinstatement upon proof of compliance with *all* of the applicable requirements and conditions, including the passage of the minimum mandatory period of suspension.

The portion of Payne's driving record from the Department of Public Safety admitted into evidence does *not* show that the suspension resulting from the 1988 DUI conviction had ended or that Payne's driver's license had ever been reinstated, but it does show that he was issued a license on April 8, 1989. This date is *less* than 120 days after the DUI conviction, and so was issued at a time when

---

[1] The 1990 amendments to OCGA § 40-5-63 rewrote that Code section to incorporate these provisions of OCGA § 40-5-70. Ga. L. 1990, p. 2048.

Payne was *not yet eligible to apply* for reinstatement.

"Any resident or nonresident whose driver's license or privilege to operate a motor vehicle in this state has been suspended or revoked as provided in this chapter shall not operate a motor vehicle in this state under a license or permit issued by any other jurisdiction *or otherwise* during such suspension or after such revocation *until the license is restored when and as permitted under this chapter*." (Emphasis supplied.) OCGA § 40-5-65. Accordingly, the premature issuance of a driver's license to Payne on April 8, 1989 was not adequate to show as a matter of law that appellant's driving privileges had been *properly reinstated*. Nor does that premature issuance refute the evidence that he drove "a motor vehicle on any public highway of this state at a time when his privilege to do so [was] suspended," OCGA § 40-5-121 (a), and *before* having his license reinstated *when and as permitted* by former OCGA § 40-5-70 (b) (1) (B). See *Goblet v. State*, 174 Ga. App. 675 (331 SE2d 56) (1985). "Administrative lapses notwithstanding, the fact that appellant had obtained a driver's license did not give him permission to drive, in contravention of [OCGA § 40-5-63 (a) (2)]." *Walls v. State*, 167 Ga. App. 276 (306 SE2d 371) (1983). "[I]t may be said that [appellant] did not intend to violate the law, and did not know that he was doing so. The reply is that [OCGA § 1-3-6] declares that 'Laws after promulgation are obligatory upon all inhabitants of this state, and ignorance of the law excuses no one.'" *Gurley v. State*, 65 Ga. 157, 158 (1880). "The general grounds are therefore without merit." *Goblet v. State*, supra at 676. .

2. The trial court admitted into evidence that portion of Payne's driving record which showed his prior conviction for DUI. Although this evidentiary ruling is enumerated as error, the record reveals that the grounds for objection argued before this court were not preserved for appellate review. *Ortiz v. State*, 189 Ga. App. 428 (1) (375 SE2d 891) (1988). Moreover, this procedure was expressly approved in *Hale*, supra at 526 (2), as the proper method for proving the license suspension in fact.

3. Payne's objection to testimony he contends impermissibly placed his character in evidence presents nothing for review because that ground was not raised below. *Jennings v. State*, 169 Ga. App. 421 (312 SE2d 877) (1984). See also *Edwards v. State*, 188 Ga. App. 667, 670-671 (7) (374 SE2d 97) (1988).

4. Payne also contends that the prosecution failed to reveal evidence in its possession which was favorable to him. Payne made no written motion for disclosure of favorable evidence, although the record shows a written certification of the State's having provided him with copies of the accusations, a list of witnesses, and a summary of his custodial statement. Payne did not move for an in camera inspec-

tion of the State's file. The only such favorable evidence now specified by him is the April 8, 1989 issuance of a driver's license. It is undisputed that Payne already knew that a driver's license had been issued subsequent to the 1988 DUI conviction. More importantly, evidence that the license was issued on April 8, 1989 is *not* favorable to his case, for it showed his *in*eligibility for reinstatement. Where information is "not specifically requested in a motion pursuant to *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), a prosecutor's nondisclosure of evidence [impairs] a defendant's right to a fair trial *only* if the evidence not disclosed is material in the sense that it might create in the minds of the jurors a reasonable doubt that did not otherwise exist. [Cit.]" (Emphasis supplied.) *Rogers v. State*, 257 Ga. 590, 592 (3) (361 SE2d 814) (1987). This evidence was not material to Payne's case.

5. Payne also enumerates the trial court's exclusion of a certified statement showing that he completed an alcohol risk reduction program on November 3, 1989, as required for reinstatement of his license under OCGA § 40-5-63 (a) (2).

"[E]ven if we conceded that [the] exclusion [of the certificate] from evidence was erroneous, we are convinced that such exclusion . . . was not harmful error so as to require a reversal. The appellant's [mother] testified [that he went to school and received a certificate *and* that she took him to show his certificate, pay his money and reinstate his driver's license], and her testimony on this subject was, in our opinion, of more probative value tha[n] the excluded [document]." *Watson v. State*, 229 Ga. 787, 790 (194 SE2d 407) (1972). See also *State v. Sears*, 202 Ga. App. 352, 353 (3) (414 SE2d 494) (1991).

*Judgments affirmed. Johnson, J., concurs. Blackburn, J., concurs specially.*

BLACKBURN, Judge, concurring specially.

I concur fully with Divisions 2 through 5 of the majority opinion.

I concur specially with Division 1 of the majority opinion. Had the evidence supported that which defendant contended, but failed to prove, then reversal would be required of his conviction of driving with a suspended license. Defendant stated that he applied for *reinstatement* of his suspended license and it was issued on April 8, 1989, 115 days after suspension. The license was issued five days before he was eligible for reinstatement pursuant to OCGA § 40-5-70 (b) (1) (B) (now codified as OCGA § 40-5-63 (a) (2)).

Defendant was arrested on the subject incident approximately 16 months following receipt of his reissued license.

As the court properly stated, it was a jury question as to whether or not defendant's license had been reinstated and his innocence or guilt of the charge of driving with license in suspension. The jury

weighed the evidence, which did not require acquittal of the defendant and decided these issues against defendant.

I specially concur to the extent that the majority opinion imports that defendant would have been guilty of driving with license in suspension, even if the evidence conclusively showed that he had otherwise properly applied for *reinstatement* of his license, albeit earlier than authorized by statute, and his license had been reissued by the State, with full knowledge of the facts, pursuant to Chapter 570-3 of the Rules of the Department of Public Safety. It is the opinion of this writer that the defendant would not be guilty of driving with license in suspension where he has been charged with such an offense more than 120 days following the original suspension where the license had been reinstated, regardless of the fact that the license was reinstated by the State five days prior to the statutorily authorized date. Under such circumstance, the defendant obviously had no intention to violate the law, and if he received his license five days early, such reissuance was done *by the State* with full knowledge of both the law and defendant's status. This type of situation is very different from that in which a defendant whose license has been suspended, simply applies for a new driver's license and does not reveal his status, and same is issued by the state without knowledge of the suspension, rather than applying for reinstatement with full disclosure. Indeed, upon proper evidence, acquittal would be demanded. Where, as here, the evidence was equivocal, the judge properly left this question of fact to the jury.

DECIDED JULY 13, 1993 —
RECONSIDERATION DENIED JULY 30, 1993.

*John H. Bedford*, for appellant.
*Gerald N. Blaney, Jr., Solicitor, Allison L. Thatcher, Assistant Solicitor*, for appellee.